Dale LONGUEVILLE, et al.,
Respondents,

v.

Robert David OLSON, Appellant.

C2-84-1644.

Court of Appeals of Minnesota.

June 11, 1985.

Terence L. Meany, Leighton, Meany, Cotter & Enger, Austin and John D. Hagen, Jr., Minneapolis, for respondents.

William A. Lanoue, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

This is an appeal from an order in supplementary proceedings appointing a receiver to bring an action to recover assets allegedly transferred to defraud creditors. We affirm.

## FACTS

In 1973 appellant Robert Olson and Dick Suess purchased a bar in Northfield, Minnesota. Olson sold his partnership interest to Suess in early 1975 but remained, allegedly unknown to him, jointly liable on the original note for the purchase price. Suess defaulted on the original note, and the vendors of the bar, respondents Dale Longueville and Marvin Peters, sued Suess and Olson for the balance remaining on the note. In 1981 a default judgment was entered against Olson and Suess jointly and individually for $91,258.

After the partnership with Suess ended in 1975, Olson moved to Austin, Minnesota, and purchased the Leisure Bar. On December 31, 1979, Olson formed a corporation called The Leisure Bar, Inc., naming himself president; his mother, Luella Olson, secretary; and his wife, Doris Olson, vice president. He issued all the shares of the newly created corporation to Luella Olson and transferred the assets and liabilities of the Leisure Bar to the corporation by a bill of sale. Luella Olson retained Olson as manager of the bar and assumed Olson's obligation on a ten-year, $15,000 note to his first wife, distributed as part of the property settlement in the marital dissolution for her partnership share of the Leisure Bar.

The business was transferred to the corporation and the shares issued to Olson's mother allegedly in return for forgiveness of $9,500 in debts incurred over the past 18 years, although Olson produced no cancelled checks or other records to substantiate the debt. He also testified that he did not know the value of the business when he transferred it, stating that it "didn't concern [him] at that time."

Olson claimed he made the transfer to protect his job at the bar in case of a second divorce. However, no proceedings have been commenced, and Olson's second wife was made an officer of the corporation. The corporation pays Olson and his wife a weekly salary, and they receive fringe benefits including lease of an automobile, $350 monthly child support payments to Olson's first wife, payments on a life insurance policy required by Olson's divorce decree, and meals, cigarettes, and liquor. Olson testified that he expects eventually to inherit part of the corporate stock.

After moving to Austin, Olson filed various financial statements with the First National Bank of Austin to obtain credit. Statements filed before the transfer of the bar did not list Olson's alleged debt to his mother; several filed after the transfer

continued to list Olson's occupation as "Leisure Bar Owner," and the value of the bar continued to be listed among Olson's "Total Current Assets" until August 1982. Olson claims the bank was aware since 1980 that the financial statements were "combined" for himself and the corporation.

In 1983 Longueville and Peters began supplementary proceedings against Olson to collect on the 1981 default judgment. They filed a motion requesting that a receiver be appointed to bring an action against Luella Olson to determine whether the Leisure Bar's assets had been fraudulently transferred. After a hearing on the motion, the court issued an order appointing a receiver and requiring Longueville and Peters to bear the receiver's costs and expenses. Olson appeals from that order.

### ISSUE

Did the trial court abuse its discretion by appointing a receiver?

### ANALYSIS

Under Minn.Stat. § 575.06 (1984), appointment of a receiver is authorized in supplementary proceedings to bring an action against a third party alleged to have property of a judgment debtor and claiming an adverse interest in it. The decision to appoint a receiver in supplementary proceedings has long been committed to the sound discretion of the trial court. *See Wilkins v. Corey,* 168 Minn. 102, 104, 209 N.W. 754, 755 (1926); *Bean v. Heron,* 65 Minn. 64, 66, 67 N.W. 805, 806 (1896); *Flint v. Webb,* 25 Minn. 263, 266 (1878).

Minnesota courts have consistently approved appointments of receivers to prosecute actions contesting allegedly fraudulent conveyances by judgment debtors. *See, e.g., Bean v. Heron,* 65 Minn. 64, 67 N.W. 805 (1896); *Dunham v. Byrnes,* 36 Minn. 106, 30 N.W. 402 (1886); *Flint v. Webb,* 25 Minn. 263 (1878). The evidence in this case demonstrates the possibility of a fraudulent conveyance: the Leisure Bar was incorporated and the assets transferred just months before Longueville and Peters sued, Olson produced absolutely no

records to substantiate the debt purportedly satisfied, the adequacy of the consideration for the transfer was questionable, and Olson retained control and management of the bar.

Olson argues that appointment of a receiver is unnecessary under these facts because Minn.Stat. § 513.28 allows "creditors whose claims have matured" to sue directly to set aside fraudulent conveyances. He further argues that the statutory provision for a direct suit abrogates the right to a suit by a receiver in § 575.06 because § 513.28 was enacted later in time.

■ We see no conflict in allowing judgment creditors to choose between suing directly or, as Longueville and Peters did, requesting appointment of a receiver to bring suit. As the Minnesota Supreme Court explained in *Lind v. O.N. Johnson Co.,* 204 Minn. 30, 282 N.W. 661 (1938), § 513.28 was enacted as a remedial measure and "simply adds an efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment." *Id.* at 40, 282 N.W. at 667. A creditor who has a judgment against a grantor "may still proceed as before." *Id.* The remedy is additional rather than exclusive.

■ Olson also argues that Longueville and Peters are attempting to "mask their true identity from the trier of fact" in violation of Minn.R.Civ.P. 17.01, which states that actions "shall be prosecuted in the name of the real party in interest". However, under rule 17.01 "a party authorized by statute" need not sue in the name of the real party in interest. Because Minn.Stat. § 575.06 authorizes a suit by a receiver in this instance, the real party in interest rule is not applicable.

■ Olson also claims prejudice because appointment of a receiver "create[s] color of prior legal adjudication of [the] creditor's fraud allegations." Although sustaining the appointment indicates some merit in the allegations of fraudulent transfer, the case must still be tried with the burden of proof resting on the plaintiff. We do not

find the speculative prejudice resulting from the procedure under which the suit is brought sufficient to render the trial court's appointment an abuse of discretion.

### DECISION

The trial court's appointment of a receiver to bring suit for fraudulent transfer was not an abuse of discretion.

Affirmed.